B. Parker Jones (OSB #191163)
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
541-344-3505
parker@tebbuttlaw.com

Timothy M. Bechtold (PHV pending)
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807-7051
406-721-1435
tim@bechtoldlaw.net

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) **COMPLAINT** ) |
| DAVID WARNACK, Willamette National Forest Supervisor, and U.S. FOREST SERVICE, | ) ) ) ) |
| Defendants. | ) ) ) ) |

Plaintiff alleges as follows:

**NATURE OF THE CASE**

1. This is an action for declaratory judgment and injunctive relief challenging Defendants' failure to analyze in an environmental assessment ("EA") or environmental impact statement ("EIS") their decision to log about 20,000 acres in western Oregon's Willamette National Forest. *See* Willamette 2020 Fires Roadside Danger (sic) Tree Reduction Project Decision Memo, August 14, 2021, attached here as Exhibit 2 ("Tree Reduction Project"). Instead of completing an environmental review required by the National Environmental Policy Act ("NEPA"), the Forest Service deemed the logging to be "road maintenance" and excluded it from review in an EA or EIS. *See* 36 CFR § 220.6(d)(4) (listing grading and resurfacing of roads, cleaning culverts, "pruning" vegetation, and clearing roadside "brush" without herbicides as activities excluded categorically from environmental review).

2. This action also challenges Defendant Warnack's decision to log in Riparian Reserves where logging is banned by the Northwest Forest Plan unless 1) fire has "degraded riparian conditions" and, 2) logging is "required" to meet Aquatic Conservation Strategy Objectives. Defendants have failed to

demonstrate that either condition has been met, in violation of the

National Forest Management Act ("NFMA"), 16 U.S.C. § 1604(i).

## JURISDICTION AND VENUE

3.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), §

2201 (declaratory judgment), § 2202 (further relief), and the Administrative

Procedures Act ("APA"), 5 U.S.C. § 701-06.

4.   Venue is appropriate in this judicial district and in this Court under 28 U.S.C.

§ 1391(e) because Defendants and Plaintiff reside in this judicial district and

a substantial part of the events or omissions giving rise to the claims herein

occurred in this district.

## PARTIES

5.   Plaintiff FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS is a

national environmental organization founded in 1989, incorporated in

Oregon, with its headquarters in Eugene, Oregon. FSEEE has 8,000

members nationwide, including members in Oregon. FSEEE's mission is to

protect national forests and to reform the U.S. Forest Service by advocating

environmental ethics, educating citizens, and defending whistleblowers.

FSEEE and its members have long-standing interest and expertise in

national forest management. FSEEE's members live, work, recreate, and engage in other activities that have been, are being, and will continue to be adversely impacted by the proposed logging. *See* Exhibit 1, Declaration of Andy Stahl. In addition, the aesthetic, conservation, recreational, economic, scientific, informational, and procedural interests of FSEEE and its members have been, are being, and, unless the relief prayed for herein is granted, will continue to be adversely affected and irreparably injured by the U.S. Forest Service's failure to comply with federal law as described below.

6.   Defendant DAVID WARNACK is Forest Supervisor of the Willamette National Forest and made the decision to log challenged in this Complaint. He is sued in his official capacity

7.   Defendant U.S. FOREST SERVICE, an agency of the U.S. Department of Agriculture, manages the land on which the logging challenged in this Complaint will occur.

## FACTS RELEVANT TO PLAINTIFF'S CLAIMS

8.   During the summer and fall of 2020, three fires (Holiday Farm, Beachie Creek, and Lionshead fires) burned vegetation affecting about 176,000 acres of the Willamette National Forest. The fires generally burned in a

mosaic pattern with a majority of the national forest area burning at a low to moderate severity. Such fires are relatively infrequent in western Oregon's Cascade mountains with a mean fire return interval of about 150 years. Some locations, such as ridgetops and dry south-facing slopes acres burn more frequently than the average, while others, such as moist valley bottoms and north-facing slopes burn less frequently.

9.  The three 2020 fires burned in a manner consistent with past scientific studies of the area's fire ecology. Fire influences and shapes the natural growth and development of this area's forests. For example, fires are the predominant method by which dead trees, called "snags," are created. Fires play a major role in how nutrients are cycled from trees to soil. Fires create habitat niches for many wildlife species, such as woodpeckers, that are adapted to the environmental conditions that fires create. Fire is a common disturbance in streamside, riparian areas, too. Fish species are well-adapted to wildfires. Fires deposit logs, gravel, and nutrients in streams that fish rely upon.

10. Logging after a forest fire is not a natural ecological process. Logging removes biomass that would otherwise remain in the forest. Logging

removes dead and live trees that would otherwise remain in the forest. The environmental effects of logging depend on the type of trees removed, how many are removed, over how large an area, and the trees' location on the landscape, e.g., near streams. Comparing the environmental effects of logging versus not logging, i.e., "no action," is one of the purposes of an environmental assessment. The Forest Service did not compare the environmental effects of logging versus "no action" when it decided to log.

11.   Logging is not "road maintenance" and, thus, not excluded from environmental review under NEPA. When the Forest Service promulgated the "road maintenance" categorical exclusion rule, 36 CFR § 220.6(d)(4), the Forest Service did not 1) notify the public that "road maintenance" includes logging; 2) list logging within the rule's scope; nor, 3) provide a rational explanation, including the factual and scientific basis, for why logging does not have significant effects and warrants exclusion from environmental review. As applied to the logging decision challenged here, relying on the "road maintenance" categorical exclusion rule exceeds the Forest Service's statutory authority under NEPA.

12. Logging thousands of acres, including tens of thousands of large, old trees, may have significant adverse environmental effects on the human environment, including on wildlife habitat and species, fish habitat and species, carbon sequestration, noxious weed encroachment, and recreational enjoyment of the affected forests. The Forest Service has not assessed these effects in an EA or EIS.

13. The environmental effects of logging will occur regardless of the need or justification for the logging. Whether the logging is intended to provide wood to lumber mills, revenue to the Forest Service's budget, roadways safer from the risk of falling trees, or a combination of the foregoing, does not affect the impact logging will have on, *inter alia*, wildlife, fish, carbon storage, weeds, visual quality, or recreation. However, not only have the environmental impacts not been disclosed in an EA or EIS, the purported benefits to mills, budgets, or public safety have also not been disclosed, denying the public (and the decisionmaker) a meaningful opportunity to weigh the alleged benefits of this logging versus its environmental costs.

14. Notwithstanding the project's title – "Willamette 2020 Fires Roadside Danger Tree Reduction" – the Forest Service did not consider any safety or risk data associated with trees falling when it decided to log.

15. It is an inescapable fact of entropy that all trees fall down at some point during their existence. Most trees that fall down are alive when they fall, while the remaining trees are dead when they fall. Across all federal lands in the United States, one percent (one person per year) of fatalities suffered by the visiting public are caused by a tree falling down. Falling over while hiking or climbing is the leading cause of backcountry deaths, accounting for about 40% of fatalities. Avalanches (15%), drowning (10%), heart attack (10%) and getting lost (6%) round out the top five. Being killed by a tree is about as likely as being killed by a bear. The risk to forest visitors associated with trees (whether living, dying or dead) falling on them are trivial compared to other risks routinely accepted by people who visit, recreate, or work on our national forests.

16. Most of the roads along which the logging will occur are managed by Defendants as "maintenance level 2" roads suitable only for high-clearance, not regular passenger, vehicles. Maintenance level 2 roads receive

infrequent use by the public and Forest Service employees compared to

highways and other roads suitable for regular passenger vehicles. In

deciding to log, the Forest Service did not consider the differential safety

risks associated with different levels of road use.

17. Cutting down trees, whether dead or alive, is one of America's most

dangerous professions. When fallers cut a tree, the chance that they are in

the potential kill zone is a 100% certainty. When natural forces cause a tree

to fall the odds that anyone is in the potential kill zone are *de minimus*. The

Forest Service did not consider these relative risks in deciding to log.

18. A preliminary injunction of the proposed logging is necessary to preserve

the status quo pending a determination of the action on the merits. A

preliminary injunction should issue because Plaintiffs have either a

combination of probable success on the merits and the possibility of

irreparable injury or serious questions are raised and the balance of

hardships tips in Plaintiffs' favor.

19. The Willamette National Forest Land and Resource Management Plan, as

amended, generally prohibits logging within Riparian Reserves. This project

proposes to log timber from Riparian Reserves. Notwithstanding this

general prohibition against logging, if a fire results in "degraded riparian conditions," logging is permitted "if required to attain Aquatic Conservation Strategy Objectives." Exhibit 2 at 18.

20.  Defendants have failed to determine that these fires degraded riparian conditions and have failed to determine that logging is required to attain Aquatic Conservation Strategy Objectives.

21.  The fires have not degraded riparian conditions and logging is not required to attain Aquatic Conservation Strategy Objectives.

22.  On April 12, 2021, FSEEE sent an email message to the Forest Service asking "[u]nder which CE does the FS believe the 2020 Roadside Danger Tree Reduction project qualifies?" *See* Declaration of Andy Stahl, Aug. 18, 2021, ¶11, Exhibit A, attached here as Exhibit 1. On April 13, 2021, the Forest Service responded: "We expect the project to be completed under the categorical exclusion for the repair and maintenance of roads (36 CFR 220.6(d)(4))." Stahl Declaration Exhibit A. On the same date, FSEEE submitted its comments on the proposed logging, noting the inappropriateness of relying on the road maintenance CE rule to justify logging. Stahl Declaration Exhibit B.

**CLAIMS FOR RELIEF**

**COUNT 1 – Defendants Violate NEPA**

23.   Plaintiff incorporates all paragraphs in this Complaint as though fully stated here.

24.   Defendants' decision approving the Willamette 2020 Fires Roadside Danger Tree Reduction Project is a final agency action subject to judicial review under the APA, 5 U.S.C. §§ 702, 704.

25.   NEPA requires federal agencies to prepare an EA to determine whether an action may have significant effects on the environment and, if so, an EIS to examine the direct and reasonably foreseeable indirect effects, and alternatives to the federal action. 42 U.S.C. § 4332; 40 CFR § 1501.4; 40 CFR § 1508.8.

26.   Logging 20,000 acres is a major federal action that may have significant environmental effects.

27.   Logging 20,000 acres is not routine road maintenance and, thus, is not categorically excluded from NEPA review in an EA or EIS.

28.   The Forest Service did not 1) notify the public that "road maintenance" includes logging; 2) list logging within the rule's scope; nor, 3) provide a

rational explanation, including the factual and scientific basis, for why logging does not have significant effects and warrants exclusion from environmental review. As applied to the logging decision challenged here, relying on the "road maintenance" categorical exclusion rule exceeds the Forest Service's statutory authority, in violation of 42 U.S.C. § 4332, et seq., and the APA, 5 U.S.C. § 706.

### COUNT 2 – Defendants Violate NFMA

29.  Plaintiff incorporates all paragraphs in this Complaint as though fully stated here.

30.  Defendants will contract for the felling and sale of the timber to be logged in this project.

31.  NFMA requires that contracts be consistent with the land management plan. 16 U.S.C. 1604(i).

32.  Contracting for the sale of trees from Riparian Reserves violates the Willamette national forest land and resource management plan, as amended, because the fires did not degrade riparian conditions and logging is not required to attain Aquatic Conservation Strategy Objectives, all in violation of 16 U.S.C. 1604(i).

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court:

A.    Adjudge and declare that Defendants violated NEPA and the APA when they approved the Tree Reduction Project;

B.    Adjudge and declare that 36 CFR § 220.6(d)(4) is invalid as applied to the Tree Reduction Project;

C.    Adjudge and declare that Defendants violated NFMA and the APA when it approved the Tree Reduction Project;

D.    Enjoin Defendants from implementing the Tree Reduction Project, either by contract or otherwise, until Defendants have fully complied with NEPA and NFMA.

E.    Award Plaintiff its reasonable fees, expenses, costs, and disbursements, including attorneys' fees associated with this litigation, under the Equal Access to Justice Act, 28 U.S.C. § 2412; and,

F.    Grant Plaintiff such further and additional relief as the Court may deem just and proper.

DATED this 18th day of August, 2021.

_____

B. Parker Jones (OSB #191163)
941 Lawrence Street
Eugene, OR 97401
(541) 344-3505
parker@tebbuttlaw.com

s/Timothy M. Bechtold
Timothy M. Bechtold
Bᴇᴄʜᴛᴏʟᴅ Lᴀᴡ Fɪʀᴍ, PLLC
P.O. Box 7051
Missoula, MT 59807-7051
406-721-1435
tim@bechtoldlaw.net

*Attorneys for Plaintiff*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRCP 7.1, Plaintiff discloses that it does not have parent

corporations, nor does the Plaintiff organization have stock.